UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


Jacqueline Hayes,

                                                    Civil No. 12-cv-577
                                                    (PJS/FLN)


                            Plaintiff,

v.                                          **REPORT AND**
                                            **RECOMMEDATION**

Federal Bureau of Prisons,
Nicole English, Ricardo Rios, Micahel Abbott,
Jorge Diaz, Joyce Anderson, Dr. Willis,
Michael Isaaccson, Deanna Hiller, Jennifer Jones
and Jeffrey Invaqson,

                    Defendants.

_____

Jacqueline Hayes, pro se.
David Fuller for DOC employees.
Andrea Hoversten for Dr. Willis.

_____

    **THIS MATTER** came before the undersigned Magistrate Judge on July 19, 2013

on Defendants' motions to dismiss, or in the alternative, for summary judgment (ECF

Nos. 27 and 47). This matter was referred to the undersigned for Report and

Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Hayes made a

telephonic appearance at the hearing and, at the Court's request, submitted documents in

her possession on July 24, 2013.[1] For the reasons set forth below, this Court recommends

_____

[1]

    Hayes did not submit opposition briefs in response to the Defendants' dispositive

1

that the Government's motion be **GRANTED in part** and **DENIED in part** and Dr. Willis' motion be **GRANTED**.

## I.   BACKGROUND

In 2008, Hayes was incarcerated at the Federal Correctional Institute in Waseca, Minnesota (FCI-Waseca). ECF No. 29 at 2. She was released to a Residential Reentry Center in October 2010 and subsequently released from the reentry center in April 2011. ECF No. 32, 1-2. While incarcerated, Hayes requested a position with the Federal Prison Industries, Inc. (UNICOR). ECF No. 29 at 2. UNICOR is a volunteer employment program designed to equip federal inmates with work experience and the opportunity to develop new skills. *Id.* Around March of 2009, Hayes began to complain that it was difficult for her to complete the fine-hand manipulation required by her position due to pain and stiffness in her fingers and hands. *Id.*

Despite numerous requests, Hayes was not relieved of her duties and given a new work assignment until November 2009. She had corrective surgery on her left hand in August 2010. ECF No. 29 at 4. At the July hearing, Hayes confirmed that she later had surgery on her right hand. Hayes brought this suit in March 2012 alleging that for eight months (circa March 2009 – November 2009), the named defendants were deliberately indifferent to her serious medical needs and that they negligently or intentionally inflicted pain, suffering and emotional distress. ECF No. 4. The ten individual defendants are sued in their official and individual capacities. *Id.* Hayes also names the Federal Bureau of Prisons as a defendant. *Id.*

motions. Hayes was referred to the pro se project in September 2012, but no attorney match was identified. ECF No. 20.

**A.  Inmate requests sent by Hayes.**

As early as April 10, 2009, Hayes noted in an inmate request to staff that she was experiencing pain in her hands and fingers. *Id.* at 89 ("[t]rigger finger hurting and I need help [ ] I'm not understanding how things work around here."). She reiterated her concerns about working at UNICOR and using her hands in a May 9, 2009 inmate request addressed to "medical" and "UNICOR/Abbott." *Id.* at 109. No staff disposition of this request was made on the form Hayes submitted to the Court.

On August 15, 2009, Hayes sent two inmate requests. *Id.* at 102 and 128. One was to Jennifer Jones, Hayes' case manager, requesting time to speak with her about her job assignment. *Id.* at 102. Hayes noted that her hands hurt so badly after work every day that she had to wear a brace at night. *Id.* She noted that Dr. Willis expressed concern that her hands may lock up permanently. *Id.* Jones referred Hayes to Health Services for her medical issues and informed her that if she wanted to change her job assignment, she would have to see her counselor. *Id.* The second request was to the Chapel work coordinator, requesting a work assignment at the chapel. *Id.* at 128. The Chapel work supervisor replied that they had no open positions. *Id.*

On August 28, 2009, Hayes wrote a request to Jorge Dias, the UNICOR factory manager, requesting permission to stop working at UNICOR due to the problems with her hands. *Id.* at 37. In that note, Hayes states that the Physician Assistant (Defendant Anderson) told her that Dr. Willis would not put her condition on paper because it would mean that she would have to stop working at UNICOR. *Id.* Diaz signed and dated this form on the same day. In the disposition section of the form, he wrote "OK". *Id.*

**B. Hayes' medical records.**

A February 2009 medical examination did not reveal any problems with Hayes' left hand or wrist. ECF No. 56 at 65. However, during a May 2009 consultation, Dr. Willis noted that Hayes was suffering from a possible trigger finger condition. ECF No. 49 at 5. Hayes claims that during this consultation, Dr. Willis told her she should stop working at UNICOR. *Id.* at 19 and 26. The consultation form indicates that Dr. Willis did not consider Hayes' hand condition urgent, but he did refer her for a general surgical consultation. *Id.* The "due date" for that consultation was June 19, 2009. ECF No. 51, Ex. C at BOP 5. It is unclear from the record if or when the surgical consultation occurred. Meanwhile, Dr. Willis provided Hayes with tape and splints for her finger and hand and instructed her to wear the splint at night in order to alleviate some of the pain. *Id.* at 6. Dr. Willis saw Hayes several more times over the course of the next few months, with the last examination taking place on June 17, 2009. *Id.* at 8. Issues relating to Hayes' trigger finger were not addressed at subsequent consultations with Dr. Willis. *Id.*

On October 26, 2009, Hayes saw Dr. Collins, a physical therapist. ECF No. 56-1 at 115. He noted that Hayes could make a full fist, but "after trying to open the hand fully she consistently has typical trigger finger position of the fourth digits. With strong overpressure from her extensors the finger is able to extend but in a quick snapping motion." *Id.* Dr. Collins recommended Hayes be referred to a hand specialist and noted that conservative treatments were exhausted and that surgery was likely necessary. *Id.* In early November, physical therapy (presumably Dr. Collins) sent an email to UNICOR about Hayes' condition and recommended she be relieved of her duties. ECF No. 29 at 3. Hayes was released from her UNICOR position on November 4, 2009. *Id.*

**C.  Hayes' effort to file a worker's compensation claim.**

Several days after Hayes was relieved from her duties at UNICOR, she sought to file a file a worker's compensation claim, presumably under the Inmate Accident Compensation Act (IACA). ECF No. 56-1 at 87; 18 U.S.C. § 4126. On November 9, 2009, Hayes sent an inmate request form to "Weydert (Safety)" indicating that she was getting the "run around" when trying to file her claim. *Id.* She indicated that other staff informed her that Weydert would give her the proper forms. *Id.* On February 4, 2010 Hayes filled out an informal resolution attempt form. *Id.* at 119. In it, she indicated that this was her third attempt to get the proper paperwork to file a worker's compensation claim. *Id.* She also indicated that she was being released from custody soon and that the time for her to file a claim was limited. *Id.*

**D.  Claims construed from Hayes' complaint.**

Hayes labels four claims in her amended complaint, but they are repetitive. ECF No. 4. For example, all four include intentional and negligent infliction of physical pain and emotional distress. *Id.* Pro-se complaints are liberally construed. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court liberally construes Hayes' amended complaint to allege: (1) a *Bivens* claim against all Defendants for their alleged deliberate indifference to her medical needs under the Eighth Amendment; (2) a negligent and/or intentional infliction of emotional distress claim against all Defendants under the Federal Tort Claims Act; and (3) a medical malpractice claim against Dr. Willis. *Id.*[2]

---

[2]
      To the extent Hayes' amended complaint attempts to plead claims based on procedural due process and various other human right statutes and treaties, the Defendants' motions to dismiss should be granted. A pleading must contain enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

## II.     LEGAL STANDARDS

### A.  Motion to Dismiss under Rule 12(b)(6)

To determine the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from the facts pled.  *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A pleading must contain enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the court finds that the facts alleged "do not permit the court to infer

---

1949 (2009). Hayes makes only conclusory statements about how the Defendants' conduct violated her rights under these varied legal theories. Also, to the extent Hayes' complaint states a claim for involuntary servitude in violation of her Thirteenth Amendment rights, the claim fails as a matter of law. *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977) ("Compelling prison inmates to work does not contravene the Thirteenth Amendment.").

more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.*, (citing Fed. R. Civ. P. 8(a)(2)).

### B. Summary Judgment standard under Rule 56.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or establish "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). In determining whether summary judgment is appropriate, a court must look at the record and any inferences drawn from it should be made in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.   ANALYSIS

### A. Sovereign Immunity.

Hayes' *Bivens* claims against the individual defendants in their official capacity are barred by the doctrine of sovereign immunity. The United States Government is immune from suit unless it has explicitly waived its sovereign immunity. *Loeffler v. Frank*, 486 U.S. 549, 554 (1988). Claims against federal employees in their official capacity are deemed to be claims against the federal government itself. *Taylor v. Rice*, LEXIS 8411, *13 (D. Minn. Jan. 6, 2012). The United States has not waived its sovereign immunity in this case. Therefore, all claims against the Defendants in their official capacity should be

dismissed. *See Washington v. DEA*, 183 F.3d 868, 873 (8th Cir. 1999).

### B.  Qualified Immunity.

Hayes' claims against the Defendants in their individual capacity may stand unless they are barred by the doctrine of qualified immunity, or dismissed on other grounds. The doctrine of qualified immunity protects government actors from personal liability unless the official's conduct "violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burton v. Martin*, 2013 U.S. App. LEXIS 24929, *17 (8th Cir. 2013). The "driving force" behind the creation of the doctrine was to eliminate insubstantial claims against government officials prior to discovery. *Anderson v. Crieghton*, 483 U.S. 635, 640 n.2 (1987). This Court considers two questions to determine whether the officials are protected by qualified immunity: (1) whether the facts alleged, viewed in the plaintiff's favor, support a finding that the conduct of the defendants violated a constitutional right; and (2) whether that constitutional right was "clearly established" at the time of the incidents such that a reasonable officer would have known that his or her actions were unlawful. *Pearson v. Callahan*, 129 S. Ct. 808, 816 (2009).  The order in which the qualified immunity prongs are addressed is left to the Court's sound discretion. *Id.* at 818.

In this case, the second criterion of the qualified immunity analysis is met. In *Bivens v. Six Unknown named Agents of Federal Bureau of Narcotics*, the Supreme Court held that an individual who suffers a constitutional violation through the actions of a federal employee may recover damages from the employee regardless of whether a statute directly confers such a right. 403 U.S. 388, 395-96 (1971). To that end, it is well established that a prison official violates an inmate's right to be free from cruel and

unusual punishment when he or she demonstrates "deliberate indifference" to the inmate's serious medical needs. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (holding that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment).

To prove such a claim under the Eighth Amendment, a plaintiff must establish that: (1) he or she suffered from an objectively serious medical need and (2) the prison officials knew of, but deliberately disregarded, that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 443 F.3d 642, 646 (8th Cir. 2006). As discussed below, all of the Government Defendants are protected by the qualified immunity doctrine or should otherwise be dismissed from the case except for Defendants Diaz and Abbott.

### C. Hayes' Eighth Amendment *Bivens* claim.

#### 1. Defendants Hiller and Jones.

All claims against Defendants Hiller and Jones should be dismissed for lack of proper service. In the alternative, Hiller and Jones are entitled to qualified immunity and Hayes' *Bivens* claim against them should be dismissed on summary judgment.

Service of process is a fundamental element of all lawsuits. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Absent proper service, "a court ordinarily may not exercise power over a party the complaint names as a defendant." *Id.*

In this case, Hayes was granted *in forma pauperis* status (IFP).[3] ECF No. 6. As such, the U.S. Marshal was responsible for effectuating proper service. 28 U.S.C. §1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (The Court "must" order the United States Marshal to complete service if the plaintiff is authorized to proceed in forma pauperis). The Court order granting Hayes' IFP status, however, states that the U.S. Marshal will complete service "as directed by the plaintiff." ECF No. 6. To that end, Hayes filled out the headers on the USM 285 forms that are returned and docketed after service of process is complete. ECF No. 7. No forms, however, were filled out for Defendants Hiller and Jones. *Id.*

The Circuits generally agree that IFP plaintiffs must assist the U.S. Marshal in effectuating service by "at a minimum [ ] request[ing] service upon the appropriate defendant[s] . . . ." *Rochan v. Dawson*, 1828 F.2d 1107 (5th Cir. 1987); *see also Harrison v. Smith*, 2013 U.S. Dist. LEXIS 93851, 2 (N.D. Cal. July 3, 2013) ("Although a plaintiff who is incarcerated and proceeding in forma pauperis may rely on service by the Marshal, such plaintiff 'may not remain silent and do nothing to effectuate such service . . . .'") (internal citations omitted). In *Moore v. Ernest-Jackson*, the Eighth Circuit held that under circumstances where an inmate listed the relevant address of all the defendants on his complaint, completion of waiver of service forms by the plaintiff was not necessary. 123 F.3d 1082 (8th Cir. 1997). Rather, the court concluded that the burden to effectuate proper service had already shifted to the Court and the U.S. Marshal. *Id.*at 1085 ("So long as the prisoner has furnished the information necessary to identify the defendant, the

---

[3]
       IFP status is granted to individuals who demonstrate that they do not have the financial resources to pay for the normal cost of litigation. 28 U.S.C. § 1915.

Marshal's failure to effect service is 'automatically good cause within the meaning of Fed. R. Civ. P. 4(m)'") (internal citations omitted).

In this case, Hayes did not list any addresses on her amended complaint. ECF No. 4. And, despite filling out the USM 285 forms for eight of the named defendants, she offered no explanation at the hearing for not including a USM 285 form for Defendants Hiller and Jones. Under these circumstances, the Court concludes that Hayes did not take reasonable efforts to identify Hiller and Jones as individuals to be served. *Tagliamonte v. Wang*, 496 Fed. Appx. 208, 211 (3d Cir. 2012) (holding that once IFP-status plaintiffs are made aware of a service defect, they are "not entirely without responsibility" to take action to cure the defect).

Even if the circumstances of this case allowed for the conclusion that the burden of service was on the Court and the U.S. Marshal—and assuming that service could now be properly effectuated—Hayes' claims against Hiller and Jones still fail. Both Hiller and Jones serve as case managers at Waseca. Hayes alleges that they were "made aware of [her carpel tunnel / trigger finger issue] on or about May 2009, [but] failed to procure the appropriate and necessary medical interventions that would have alleviated [her] the pain and suffering [ ]." ECF No. 4 at 6, ¶ 27. Jones is now retired, but she served as Hayes' case manager from November 20, 2008 through June 3, 2009. Jones' declaration states that she does not recall Hayes complaining of pain in her hands. Jones Decl., ECF No. 39. Hiller did not personally serve as Hayes' case manager but does recall Hayes complaining about pain in her hands. Hiller Decl., ECF No. 36. Hiller recalls advising Hayes to seek medical attention. *Id.*

Among the 134 pages of prison records submitted by Hayes after the hearing, there

are no internal reports or requests addressed to Hiller. There is, however, a relevant inmate request to Jones dated August 15, 2009. As noted in the background section, *supra*, Hayes indicated that her hands were giving her trouble and that she wanted to discuss changing jobs. ECF No. 56-1 at 102. Jones referred her to medical services and informed her that if she wanted to change jobs, she should see her counselor. *Id.* Despite this evidence that clearly contradicts Jones sworn declaration, no genuine issue of material fact is present because Hayes fails to show that Hiller or Jones knew of a substantial risk of serious harm, but intentionally denied treatment or delayed access to treatment. *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011) ("Deliberate indifference must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'"). Based on the record before the Court, it appears both Hiller and Jones followed appropriate prison protocols by referring Hayes to medical services. Thus, Hayes' claims against Jones and Hiller should be dismissed for failure to serve, or in the alternative, on summary judgment grounds.

## 2. Defendants Invaqson, English and Rios.

Hayes' amended complaint fails to state a *Bivens* claim against Invaqson, English and Rios. Defendant Invaqson's name appears penned into the header of the complaint, but his name does not appear in the body of the complaint. ECF No. 4. Because Hayes does not allege any specific factual allegations against Invaqson, all claims alleged against him should be dismissed. Defendants English and Rios are named in the body of the complaint, but Hayes' allegations against them are nothing more than general legal conclusions. ECF No. 4. at 2. For example, Hayes alleges that "Warden English and Rios [ ] are guilty of violating Plaintiff's Constitutional Rights as well as the treaties and

Conventions against Torture and federal laws prohibiting the mistreatment of persons in the custody of the United States government on or about and during the months of 2009." *Id.* at 10. Such a conclusory statement, absent specific factual allegations, is insufficient to state a cognizable claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (U.S. 2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). For these reasons, Hayes' claims against Defendants Invagson, English and Rios should be dismissed under Rule 12(b)(6).

### 3.  Defendant Anderson.

Hayes' *Bivens* claims against Defendant Joyce Anderson should be dismissed pursuant to the Public Health Service Act. Anderson formerly served as the Health Services Administrator at Waseca. ECF No. 32. She retired in 2009. For the duration of her time at Waseca, she was employed by the United States Public Health Service (USPHS). *Id.* Hayes alleges that she complained to Anderson about the pain in her hands and the lack of treatment she received from Dr. Willis. According to Hayes, Anderson did not "move in her personal or professional capacity to assist Plaintiff Hayes to receive the medical attention Plaintiff needed." ECF No. 4, ¶¶18 and 27. The Government argues that Anderson is immune from suit in accordance with the Public Health Service Act. ECF No. 29 at 13.[4] The Court agrees.

---

[4]

> The Government also argues that Anderson was not served. ECF No. 29 at 19. There is a process receipt and return for Anderson accepted by Lieutenant Dunkin. ECF No. 7. However, according to Anderson's declaration, she was only stationed at Waseca until September of 2009. Therefore, it is possible that Dunkin's acceptance of service on Anderson was ineffective. It is not clear, however, that the Bureau of Prisons ever replied to the Marshal to indicate improper service. Because Anderson is immune from personal liability under the Public Health Service Act, the Court recommends dismissing Hayes' claims

The Public Health Service Act protects USPHS employees from being sued in their individual capacities and makes the Federal Tort Claims Act (FTCA) the sole remedy for, *inter alia*, personal injury caused by medical personnel acting in their official capacity. 42 U.S.C. § 233(a). Here, Anderson was a public health service employee and Hayes' allegations against her pertain to her official duties. Thus, Hayes' *Bivens* claim against Anderson is barred. *Hui v. Castaneda*, 559 U.S. 799, 802 (U.S. 2010) ("Based on the plain language of §233(a), we conclude that PHS officers and employees are not personally subject to *Bivens* actions . . . .").

### 4. Defendant Issacson.

Hayes' *Bivens* claim against Issacson should be dismissed on summary judgment. Defendant Michael Issacson formerly served as a Unit Manager at Waesca. He retired in June, 2011. Similar to the allegations made against Hiller and Jones, Hayes alleges that Issacson was "made aware of the situation on or about May 2009 [ ] and failed to procure the appropriate and necessary medical interventions that would have alleviated the pain and suffering of Plaintiff." ECF No. 4 at 6, ¶ 27. Hayes also alleges that Issacson allowed her to continue working at UNICOR despite being aware of her medical condition and that he threatened her with administrative punishments if she did not report to work. ECF No. 4 at 39 and 41. In his declaration, Issacson states that he has no memory of Hayes as an inmate, let alone any recollection of her complaining to him personally about any problem with her hands. ECF No. 38. Among the documents submitted by Hayes, there are no relevant inmate requests addressed to Issacson. ECF No. 56-1. Hayes' vague allegations against Issacson and the record before this Court do not create a genuine issue of material fact as to whether Issacson knew of a substantial risk of serious harm, but

against her on those grounds.

intentionally denied treatment or delayed access to treatment. All claims against Issacson should be dismissed on summary judgment grounds.

### 5.   Defendant Dr. Willis.

Dr. Willis contends that he is not liable under *Bivens* because he is not a federal government employee.[5] Dr. Willis is correct. Eighth Amendment *Bivens* claims can be made against federal employees who are otherwise immune from state-law tort actions. *Minneci v. Pollard*, 132 S. Ct. 617, 620 (2012) (holding that a *Bivens* action against employees of a privately operated federal prison was not allowed because "state tort law authorizes adequate alternative damages actions—actions that provide both significant deterrence and compensation . . . .") Because Dr. Willis is a private citizen against whom Hayes may pursue state tort medical malpractice claims, her *Bivens* claim against him should be dismissed. *See also Flores v. United States*, 689 F.3d 894, 903 (8th Cir. 2012).

### 6.   Defendants Diaz and Abbott.

Hayes' *Bivens* claim against Diaz and Abbott should not be dismissed because genuine issues of material fact remain. Jorge Diaz served as the Factory Manager at UNICOR for the duration of Hayes' employment there. ECF No. 34. Michael Abbott serves as the Superintendent of Industries at Waseca. ECF No. 31. In this position, Abbott oversees the operations, production, and product quality of UNICOR to ensure financial goals/contracts are met. *Id.* Hayes alleges that she approached Diaz and Abbot in July 2009 to request a new job due to the pain she was suffering in her hands. ECF No.

---

[5]

From February 2, 2009 to March 26, 2009 and from May 5, 2009 to June 25, 2009, Dr. Willis replaced another physician at Waseca on a temporary basis. ECF No. 47 at 4. The Court notes that because Willis is not a government official, the qualified immunity doctrine is not applicable.

4, ¶¶ 19 and 20. Throughout the complaint, Hayes alleges that Diaz and Abbot (1) refused to allow her to stop working at UNICOR and (2) threatened to send her to the SHU or levy other administrative punishments against her if she stopped working. *Id.* at ¶¶ 35, 39 and 44.

In Diaz's declaration, he states that he does not recall Hayes approaching him in July 2009 or at any other time with complaints of pain in her hands. Neither does Diaz remember Hayes requesting a meeting or time off. ECF No. 34. He notes that inmates who wish to stop working at UNICOR must submit a written request to their immediate supervisor. *Id.* [6] Diaz emphasizes that UNICOR is a voluntary work program and that "I would not deny any inmate's request for termination of employment." *Id.* at 3. Diaz's declaration is contradicted by the documents Hayes' submitted. On August 28, 2009 Hayes filled out an inmate request form addressed to Diaz. She stated the following:

> I would like to thank you and UNICOR for the experience here at
> UNICOR, but I would like to leave because my hands hurt me so bad at
> night [that] I have to wear a sling because my hand[s] lock up and the Dr.
> don't want them to lock permanently. He said it [is] call[ed] trigger finger.
> And the Dr. said I have to make the choice to keep doing the work or not
> and the PA said she couldn't put it in writing because I would lose my job
> at UNICOR. I have made the choice. I am very sick with sinus and very
> very very stress[ed] out working here. Beyond human ability. I have
> already been accepted in the NRAP program. This [will] be helpful for
> me. Also I would like to work somewhere that I don't need to [do so]
> much repetition with my hands. Thank you.

*Id.* at 111. Diaz signed and dated the form on the same day and wrote "OK" in the disposition section of the form. *Id.* Hayes was not released from her position at UNICOR until early November 2009, more than two months later.

---

[6] Based on the record before the Court, it is unclear who served as Hayes' immediate supervisor at UNICOR.

In Abbott's declaration, he admits that Hayes approached him regarding her job assignment. *Id.* ¶ 3. Abbott claims that he asked Hayes if she had spoken to Diaz and that Hayes answered "no." *Id.* He also notes that he asked her if she had a note from medical services specifying work restrictions, and that she did not. *Id.* Abbott claims that he told Hayes UNICOR would accommodate written medical restrictions. *Id.* Among the documents submitted by Hayes is a May 9, 2009 inmate request sent to "Medical / UNICOR Abbott." Hayes wrote:

> I'm very sick of trying to go to work on med[icine] that make[s] me sleep[y] and in pain. [T]his is inhumane. You don't treat animals this way. This is just modern day slavery. I have ask[ed] to be moved from UNICOR. In fact I don't see why I have to work anywhere [ ] sick in the prison. You saying can'[t] use hand is not enough and Medical [the PA says] that I could lose my job at UNICOR. I don't care about a job, I'm losing my hands!

ECF No. 56-1 at 109. No comments are made in the "disposition" portion of the form, nor did any staff member sign or date the form. *Id.* [7]

Based on the record before the Court, Hayes may have been suffering from an objectively serious medical need prior to her November 2009 release from UNICOR. The Eighth Circuit defines a serious medical need as one that "has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). A May 12, 2009 health report indicates Hayes should "follow past treatment plans" in regard to her trigger finger condition. ECF No. 56-1 at 7. During

---

[7]

> The Court notes that there are several other documents among those submitted by Hayes, the date and addressees of which are unclear, that suggest medical would not give Hayes written restrictions until it was confirmed by Abbott that she was not needed at UNICOR. *Id.* at 117, 121 and 122.

Hayes' May consultation with Dr. Willis, he assessed that she suffered from trigger finger syndrome and treated her with tape and a splint for her finger and wrist. ECF No. 51-3, BOP 4 (filed under seal). He also recommended that she see a surgeon for a consultation within one month. *Id.* at BOP 5. Other courts have held that "[t]he existence of a carpal tunnel condition requiring corrective surgery suggests the existence of a serious medical condition." *Campos v. Srivastava*, 2012 LEXIS 42980, *6 (E.D. Cal. Mar. 28, 2012). The present record makes clear that by the end of October, Hayes trigger finger condition was likely an objectively serious medical condition. ECF No. 56-1 at 115. The physical therapist noted that only with "strong overpressure from her extensors" were her trigger fingers able to extend, "but in a quick snapping motion." *Id.* However, the Court does not have enough information to determine whether Hayes' condition was an objectively serious medical need prior to the end of October. Specifically, the Court does not know (1) what treatment plans were prescribed prior to May 2009; (2) whether the June surgical consultation ordered by Dr. Willis occurred; and (3) the scope of medical consultations Hayes had with other Doctors and/or medical staff from May 2009 – October 2009.

The record before the Court also suggests the possibility that Diaz and Abbott knew of Hayes' condition but deliberately disregarded it. Hayes' August inmate request to Diaz discredits his sworn declaration that Hayes never approached him about her condition. *Id.* at 111. No explanation of Diaz's "OK" disposition of Hayes' August inmate request is provided. *Id.* It is unclear what, if any, immediate action was taken to address Hayes' condition. The inmate request sent to Medical/UNICOR/Abbott was dated May 9, 2009. *Id.* at 109. Abbott, however, does not specify in his declaration the

date that he recalls Hayes approaching him. ECF No. 31. The following evidence would allow the Court to determine whether Diaz and Abbott were deliberately indifferent to Hayes' serious medical condition: (1) an exhaustive record of Hayes' inmate requests and other complaints made to Abbott and Diaz and (2) a more comprehensive explanation for the procedures one must follow to get both written restrictions from medical services and a new job assignment.[8]

For all of these reasons, genuine issues of material fact remain in regard to Hayes' Eighth Amendment deliberate indifference claims against Diaz and Abbott. The Government's motion as it pertains to Diaz and Abbott on these claims should be denied.

### D.   The Federal Tort Claims Act

The Federal Tort Claims Act (FTCA) waives the federal government's sovereign immunity for negligence claims made against the United States and its employees. 28 U.S.C. § 2674. The Court has jurisdiction on civil action claims against the United States for money damages when an inmate suffers:

> . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA requires claimants to exhaust their administrative remedies by presenting their claim to the appropriate federal agency and receiving a written denial before filing suit. 28 U.S.C. § 2675(a); *Stackhouse v. United States*, 2011

---

[8]

      Notably, numerous inconsistencies between the record and the Defendants' sworn declarations have been identified by the Court and no objective evidence was submitted by the Government Defendants in support of their motion for summary judgment.

U.S. Dist. LEXIS 20231 at *35 (D. Minn. Feb. 11, 2011). In this case, the Government contends that the claims Hayes alleges under the FTCA are barred because the Inmate Accident Compensation Act (IACA) is the exclusive remedy for prisoners who suffer work-related injuries, including any aggravation of those injuries by subsequent negligent treatment. ECF No. 27 at 24. The Government is correct.

The IACA allows the Prison Industry Fund to compensate inmates or their dependents for "injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126. The Supreme Court has held that the IACA is the exclusive remedy for inmates who suffer an injury on the job while in prison. *United States v. Demko*, 385 U.S. 149, 151-53 (1966) ("[c]ompensation laws are practically always thought of as substitutes for, not supplements to, common-law tort actions."); *see also Smith v. United States*, 561 F. 3d 1090, 1099 (10th Cir. 2009) (holding that a prisoner who has the right to sue under the IACA cannot sue the government under the FTCA); *Peguero v. Meyer*, 2012 U.S. Dist. LEXIS 140304, 16 (D.N.J. Sept. 28, 2012) (same); *Webb v. Lappin*, 2008 U.S. Dist. LEXIS 73937, 10 (E.D. Va. Sept. 22, 2008) (same).

Here, the parties now agreed that Hayes' trigger finger was caused by her work at UNICOR. Hayes' complaint and the documents submitted in support of her claims make clear that she started having pain in her hands while working at UNICOR (by at least March 2009) and that the trigger finger condition that plagued both of her hands deteriorated as time passed during her employment. ECF No. 56-1. Notably, the Government acknowledges that FCI-Waseca did not initially classify Hayes' injury as work-related, but now in support of its IACA preclusion argument, the Government

admits that Hayes was performing repetitive tasks with her hands at her UNICOR job.

ECF No. 29 at 25, fn 10. To that end, the Government emphasizes that a work-related

injury includes "any injury, including occupational disease or illness, proximately caused

by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102; ECF

No. 29 at 25, fn 10. Because the parties now agree that Hayes' injury was work related,

her FTCA claims should be dismissed. [9] The IACA is Hayes' exclusive remedy under

---

[9]

    If Hayes' FTCA claims were to be considered on the merits, it appears they would fail because Hayes did not exhaust her administrative remedies. 28 U.S.C. § 2675(a). Section 2675(a) requires claimants to present their claim to the appropriate federal agency and receive a written denial before filing suit. *Id.* The statute of limitations for a FTCA tort claim is "two years after such claim accrues." 28 U.S.C. 2401. The general rule is that a claim accrues at the time of injury. *Motley v. United States*, 295 F.3d 820, 822 (8th Cir. 2002). However, for medical malpractice claims, a claim accrues when the plaintiff "actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury." *Id.*, (citing *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987)) (quotations omitted). Because the FTCA's statute of limitations is not jurisdictional, the Eighth Circuit has held that failure to comply with it is "merely an affirmative defense which the defendant has the burden of establishing." *Motley* 295 F.3d (citing *Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991)).

    Here, it appears the Government has met its burden. Based on the facts alleged in Hayes' amended complaint, all FTCA claims accrued by—at the latest—November 4, 2009 when she was relieved from her duties at UNICOR. Although Hayes does not specify an exact date of her injury, she argues that she should have been relieved from her work and received additional medical attention in the spring of 2009. ECF No. 4. Further, throughout Hayes' complaint, she alleges that her hands started hurting during her work at UNICOR and that her injury was exacerbated by her work. *Id.* These allegations are sufficient to conclude that Hayes knew the cause of her injuries. Thus, to be timely under 28 U.S.C. § 2401, Hayes needed to file her administrative claim by November 4, 2011 (two years after she was dismissed from her UNICOR position). Hayes' administrative claim is dated January 20, 2012. ECF No. 33-3. Thus, even if the IACA did not preclude Hayes from bringing claims under the FTCA, the claims would fail on these grounds.

these circumstances.[10]

### E.   Hayes' potential IACA claim.

Based on the record before the Court, dismissal of Hayes' FTCA claims raises questions about whether the Federal Bureau of Prisons and its staff fulfilled its obligation to assist Hayes in preparing her application for benefits under the IACA. 28 C.F.R. 301.303(a) ("Assistance will be given [sic] the inmate to properly prepare the claim, if the inmate wishes to file."). The record makes clear that Hayes sought to file a worker's compensation claim, presumably under the IACA, but that she faced significant bureaucratic hurdles in securing the appropriate forms from BOP staff. ECF No. 56-1 at 87 and 119. For example, on November 9, 2009—five days after being relieved from her UNICOR duties—Hayes submitted an inmate request to staff that stated:

> I have been giv[en] the run around about my injury. [M]y boss told me I had to get with you and gave me your name. [Y]ou said they have to turn in to you. Now they [are] saying the injury [didn't] happen there and I need to send proof from medical. [sic]. Dr. Anderson states she sent you medical record[s] [and] I have enclosed the ones I have. Also[,] I was under the [impression] that you are suppose[d] to give me the paper work you said to take with me when I leave. My time is running short and I need the workman comp information.

*Id.* at 87. Three months later, on February 4, 2010, Hayes submitted an Informal Resolution Attempt. *Id.* at 119. The resolution form explicitly alleges that Medical, UNICOR and other staff "refuse to give me information [about] my workman compensation injury [suffered] on this job." *Id.* She notes that this was her third request for help and that she was being "shut down." *Id.* It also appears that Hayes was concerned

---

[10]

Because the Government's position on the question of whether Hayes' injury was work related appears to have shifted, and in light of the IACA issues discussed in Section E, the Court recommends dismissing Hayes' FTCA claims without prejudice.

her time to file a claim was running short. *Id.*

Hayes did not bring a claim pertaining to any potential wrongful conduct by the Government in regard to her IACA application. Thus, this issue is not properly before the Court. However, the possibility that the BOP denied Hayes' effort to file a claim under the IACA on the basis that her injury *was not* work related—only to now have the Government rely on the argument that Hayes' FTCA claims are barred because her injury *was* work related—is disturbing. Because this unique circumstance raises sophisticated legal questions that are not now properly before the Court, Ms. Hayes will be referred back to the Federal Pro-se Project to see if an attorney match might be found to assist her at this stage of the case. Hayes is encouraged to consider the possibility of seeking leave to amend her complaint in order to properly plead this issue.

### F.  Hayes' state-law medical negligence claim against Dr. Willis fails.

Hayes' state-law medical negligence claim against Dr. Willis should be dismissed for failure to comply with Minn. Stat. § 145.682. In Minnesota, a plaintiff may prove a *prima facie* case of medical malpractice by establishing (1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from the standard of care and (3) that the defendant's departure from the standard was a direct cause of the plaintiff's injuries. *Plutshack v. Univ. of Minn. Hosp.*, 316 N.W. 2d 1, 5 (Minn. 1982).

However, in 1986 the Minnesota legislature passed a law designed to reduce the number of medical malpractice nuisance suits. Minn. Stat. § 145.682. Specifically, the statute requires that plaintiffs who seek to bring a medical malpractice claim meet several requirements, including the attachment of an affidavit to his or her complaint stating that a qualified expert has reviewed the facts of the case and believes that the plaintiff's

injuries indeed resulted from the medical professional's failure to abide by an established standard of care. Minn. Stat. § 145.682, Subd. 2 (1) and Subd. 3 (a). Then, 180 days after the suit is filed, the plaintiff must submit another affidavit (or an interrogatory response) that identifies the experts who will be called upon at trial, the facts and opinions as to which the expert(s) will testify and a summary of each expert(s) opinions. *Id.* at Subd. 4. *Wheatley v. Smith*, 2013 U.S. Dist. LEXIS 133369, *28 (D. Minn. June 25, 2013), *adopted by* LEXIS 132627, *2 (D. Minn. Sept. 16, 2013).

These affidavits are not necessary if the plaintiff can establish liability without expert testimony. *Id.* Subd. 2; *Anderson v. United States*, 2013 U.S. Dist. LEXIS 56812, *55 (D. Minn. January 25, 2013). Minnesota courts have held that "expert testimony is not necessary where the facts to be determined are within the common knowledge of the jury and where the results of surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence." *Baurer v. Friedlandi*, 394 N.W. 2d 549, 553 (Minn. Ct. App. 1986). If expert testimony is required to establish liability, the penalty for not complying with the affidavit requirement is mandatory dismissal with prejudice. Minn. Stat. § 145.682, Subd. 6.

Here, Hayes cannot prove that Dr. Willis was negligent without expert testimony. Dr. Willis concluded that the condition of Hayes' trigger finger was not urgent when he saw her in May 2009. ECF No. 51, Ex. C at BOP 4. He referred her for a surgical consultation, and although Dr. Willis did not follow up with Hayes about her trigger finger issues in subsequent consultations, his actions were not clearly negligent. *Id.* at BOP 5. Hayes has not complied with the affidavit requirements of Minn. Stat. § 145.682,

and thus her medical negligence claims should be dismissed with prejudice.

## IV. CONCLUSION

Hayes' complaint falls short in its attempt to allege viable *Bivens* claims against Defendants Hiller, Jones, Invaqson, English, Rios, Anderson and Issacson. The claims against these defendants should be dismissed for the reason articulated above. Similarly, Hayes' claims against Dr. Willis should be dismissed because (1) a *Bivens* claim cannot be maintained against him as a private citizen and (2) Hayes failed to comply with the statutory expert affidavit requirements necessary to maintain a medical malpractice claim under Minnesota law.

However, the documentation submitted by Hayes after the hearing creates a genuine issue of material fact in regard to whether Defendants Diaz and Abbott were deliberately indifferent to Hayes' serious medical needs. And the Government's position that Hayes' trigger finger condition was caused by her work at UNICOR—and therefore precludes her FTCA claims—raises significant questions about whether the Bureau of Prisons and its relevant staff provided Hayes the opportunity to file a claim under the IACA. As noted above, the Court will again refer Hayes to the Federal Pro-se project. The Court will provide a reasonable amount of time for an attorney match to be identified and thereafter, a new scheduling order will be entered. Hayes should anticipate that the damages she is entitled to, if any, will be modest—surely a fraction of the $3,000,000 she sought in her amended complaint. *See* CFR 28 § 301.314.

## RECOMMENDATION

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Government's motion to dismiss (ECF No. 27) should be **GRANTED in part and DENIED in part**, as follows:

   a. To the extent the Government seeks to dismiss all claims alleged against Hiller and Jones, the motion should be **GRANTED.** All claims against Hiller and Jones should be **DISMISSED WITH PREJUDICE** on the basis that the Defendants were not properly served, or in the alternative, on summary judgment.

   b. To the extent the Government seeks to dismiss all claims alleged against Invaqson, English and Rios, the motion should be **GRANTED** and all claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim.

   c. To the extent the Government seeks to dismiss all claims alleged against Defendant Anderson, the motion should be **GRANTED** and all claims should be **DISMISSED WITH PREJUDICE** on the basis that Anderson is immune from suit in accordance with the Public Health Service Act.

   d. To the extent the Government seeks to dismiss all claims alleged against Issaccson, the motion should be **GRANTED** on summary judgment and **DISMISSED WITH PREJUDICE**.

   e. To the extent the Government seeks to dismiss all claims alleged against Defendants Abbott and Diaz, the motion should be **GRANTED in part and DENIED in part**, as follows:

      i. As it pertains to Hayes' Eighth Amendment claims pled against Abbott and Diaz, the Government's motion should be **DENIED**.

      ii. As it pertains to all other claims alleged against Abbott and Diaz, the motion should be **GRANTED** and those claims should be **DISMISSED WITH PREJUDICE**.

   f. To the extent the motion seeks to dismiss Hayes' FTCA claims, the motion should be **GRANTED** and all claims should be **DISMISSED WITHOUT PREJUDICE.**

       g.   To the extent the motion seeks to dismiss any other claims pled by Hayes, the motion should be **GRANTED** and all claims should be **DISMISSED WITH PREJUDICE.**

2.   Defendant Dr. Willis' motion to dismiss (ECF No. 47) should be **GRANTED** and all claims against him should be **with DISMISSED WITH PREJUDICE.**


DATED: January 29, 2014                     _s/Franklin L. Noel_
                                             FRANKLIN L. NOEL
                                               United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before February 12, 2014 written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.