UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jacqueline Hayes,                                    Civil No. 12-577 (PJS/FLN)

        Plaintiff,
                                                    **REPORT AND**
v.                                                   **RECOMMENDATION**
                                                    **AND ORDER**
Federal Bureau of Prisons et al.,

        Defendants.

_____

Jacqueline Hayes, *pro se*, for Plaintiff.
David Fuller, Assistant United States Attorney, for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' second motion for summary judgment (ECF No. 67) and Plaintiff's request for an extension of time to file responsive briefing (ECF No. 76). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, Plaintiff's request is **DENIED**, and the Court recommends that Defendants' motion be **GRANTED**.

### I. FINDINGS OF FACT

**A.    Factual Background**

Plaintiff Jacqueline Hayes was incarcerated at the Federal Correctional Institute in Waseca, MN ("FCI-Waseca") from November 2008 until October 2010 after being convicted for conspiracy to defraud a health care benefit program (18 U.S.C. §§ 2 and 371), failure to pay over employment taxes (26 U.S.C. § 7202; 18 U.S.C. § 2), and fraudulent use of another's social security number (42 U.S.C. § 408; 18 U.S.C. § 2). Defs.' Mem. in Supp. of Second Mot. for Summ. J. 9, ECF No. 68.

Upon her arrival at FCI-Waseca, Hayes signed up to work for Federal Prison Industries, Inc.

("UNICOR").[1] *Id.* at 9. The UNICOR facility at FCI-Waseca produces clothing items and offers inmates various work positions that involve sewing, trimming, folding, and packaging clothing. *Id.* at 2–3. Hayes was initially assigned to work a "button-hole" machine, but was reassigned to a simpler "trim table" four weeks later. *Id.* at 9. According to Cynthia Hamrock, a Fabric Worker Supervisor at UNICOR, Hayes experienced difficulty understanding how to operate the button-hole machine and thus, pursuant to Hayes' request, she was reassigned to work at the trim table. Hamrock Decl. ¶ 4–5, ECF No. 73. The reassignment was not, however, due to any physical limitation. *Id.* ¶ 4. Hayes's work on the trim table involved using a "nippers"—a small, spring-loaded snipper used to cut fabric. ECF No. 68 at 9–10.

Around April 2009, Hayes began experiencing pain in her hands and fingers due to the work she was performing for UNICOR. *See* Pl.'s Post-Hearing Exs., ECF No. 56-1 at 89 (showing that Hayes noted in an inmate request that she was experiencing pain in her "trigger finger"). This pain persisted for months and made it difficult for her to perform the fine-hand manipulation required by her job at UNICOR. This pain ultimately forced Hayes to quit working at UNICOR in November 2009. ECF No. 68 at 16. In August 2010, corrective surgery was conducted on Hayes' left hand. Buege Decl. ¶ 4, ECF No. 33. At a July 2013 hearing before this Court, Hayes confirmed that she later had corrective surgery on her right hand as well.

**B.     Procedural Background**

On March 5, 2012, Hayes filed a *pro se* complaint against the U.S. Bureau of Prisons

---

[1] UNICOR is an employment program and wholly-owned federal government corporation within the U.S. Bureau of Prisons. ECF No. 68 at 1. UNICOR is designed to equip federal inmates with work experience and the opportunity to develop new skills. *Id.* at 2.

("BOP") and ten named defendants, in both their official and individual capacities. *See* Compl., ECF No. 1. Hayes filed an Amended Complaint on April 23, 2012. Am. Compl., ECF No. 4. Hayes's Amended Complaint alleges that for eight months (March 2009 to November 2009), the named defendants were deliberately indifferent to her serious medical needs (i.e., her hand and wrist pain) and that they negligently or intentionally inflicted pain, suffering, and emotional distress. *See generally id.* The ten named defendants were: (1) Nicole English, Warden of FCI-Waseca; (2) Ricardo Rios, Warden of the Federal Correctional Institution in Pekin, IL; (3) Michael Abbott, Superintendent of Industries at FCI-Waseca; (4) Jorge Diaz, a former Factory Manager at FCI-Waseca; (5) Joyce Anderson, the Health Services Administrator at FCI-Waseca; (6) Dr. Samuel Willis, a medical service provider at FCI-Waseca; (7) Michael Isaaccson, a former Unit Manager at FCI-Waseca; (8) Deanna Hiller, a former Case Manager at FCI-Waseca; (9) Jennifer Jones, a former Case Manager at FCI-Waseca; and (10) Jeffrey Ingvaldson, a Correctional Counselor at FCI-Waseca. *See generally* ECF No. 4. Reading Hayes's Amended Complaint liberally, Hayes asserted three separate claims: (1) a *Bivens* claim against all Defendants for their alleged deliberate indifference to her medical needs under the Eighth Amendment; (2) a negligent and/or intentional infliction of emotional distress claim against all Defendants under the Federal Tort Claims Act; and (3) a medical malpractice claim against Dr. Willis. *See generally id.*

On May 13, 2013, all named Defendants filed motions to dismiss and/or motions for summary judgment. *See* Mot. to Dismiss or for Summ. J., ECF No. 27; Mot. for Summ. J., ECF No. 47. Although Hayes did not submit opposition memoranda, she did appear by telephone at the motion hearing held before this Court on July 19, 2013. *See* Court Minutes, ECF No. 55. Following the motion hearing, Hayes submitted, with the Court's approval, 234 pages of documents. *See* Pl.'s

Post-Hearing Exs., ECF Nos. 56 and 56-1. The Court issued a Report and Recommendation on January 29, 2014, recommending that most of Hayes's claims should be dismissed. Report and Recommendation 26–27, ECF No. 59. Specifically, the Court recommended dismissing all of Hayes's claims against all Defendants except for Hayes's *Bivens* claim against Defendants Abbott and Diaz, Hayes's UNICOR supervisors, for their alleged deliberate indifference to Hayes's medical needs under the Eighth Amendment. *Id.* at 15–19. The Court concluded that given the record before it, without a more comprehensive explanation for the procedures an inmate must follow to get work restrictions from medical services and a new job assignment, it could not say as a matter of law that no genuine issue of material fact existed as to Hayes's *Bivens* claim against Abbott and Diaz. *Id.*

Defendants Abbott and Diaz objected to this Court's Report and Recommendation on February 12, 2014, arguing, among other things, that the Court incorrectly determined that Abbott and Diaz were not entitled to summary judgment. Objection to Report & Recommendation 1, ECF No. 60. Specifically, Defendants argued that in denying the motion, the Report and Recommendation incorrectly relied on post-hearing documents submitted by Hayes that Defendants did not have the opportunity to respond to. *Id.* at 8–11. On March 17, 2014, Judge Patrick J. Schiltz issued an Order, adopting in part and rejecting in part this Court's Report and Recommendation. Order, ECF No. 64. In his Order, Judge Schiltz agreed that Hayes's Eighth Amendment claims against Abbott and Diaz should survive, but noted:

> Defendants object to these recommendations, in large part based on the argument that Judge Noel wrongly assumed that some of the documents submitted by Hayes had previously been submitted to the BOP or to UNICOR. But defendants seem to have overlooked the fact that Hayes's amended complaint is verified, which makes it equivalent to an affidavit for purposes of summary judgment. *See Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 682 (8th Cir. 2012). Defendants have therefore not addressed whether the allegations in Hayes's amended complaint, in combination with the documents that Judge Noel permitted her to submit, create a genuine issue of fact.

> Although the Court is sympathetic to defendants' complaint that they should not have been sandbagged by Hayes's belated submissions, the Court believes that, at this point, the best course of action is to deny their motion as to the Eighth Amendment claims against Abbott and Diaz without prejudice. On remand, a full record can be developed, defendants can again seek summary judgment on those claims, and the issues can be properly briefed.

*Id.* at 3–4. Additionally, with regard to whether Hayes provided sufficient factual support for her claims to avoid summary judgment, Judge Schiltz stated, "If defendants again move for summary judgment—and, in response, Hayes fails to submit sufficient evidence to establish an essential element of her Eighth Amendment claims—defendants' motions should be granted." *Id.* at 5. Judge Schiltz concluded his Order by denying, without prejudice, Defendants' motion for summary judgment as to Hayes's Eighth Amendment *Bivens* claims against Abbott and Diaz in their individual capacities. *Id.* at 7. Judge Schiltz did, however, (1) dismiss all claims against Dr. Willis with prejudice; (2) dismiss all claims under the Federal Tort Claims Act without prejudice; (3) dismiss all of Hayes's Eighth Amendment claims against the Federal Bureau of Prisons and the individual defendants in their individual capacities without prejudice; and (4) dismiss all other claims with prejudice. *Id.* at 7–8. Accordingly, Hayes's only remaining claims after Judge Schiltz's Order are: (1) an Eighth Amendment *Bivens* claim against Abbott in his individual capacity, and (2) an Eighth Amendment *Bivens* claim against Diaz in his individual capacity. *Id.*

Abbott and Diaz (collectively, "Defendants") now move again for summary judgment. Second Mot. for Summ. J., ECF No. 67. Primarily, Defendants argue that they have provided additional evidence that demonstrates that none of the allegations against them in Hayes's Amended Complaint establish a constitutional violation. ECF No. 68 at 28. Hayes did not respond to this

5

motion.[2] For the reasons discussed below, the Court agrees with Defendants and recommends that Defendants' second motion for summary judgment be granted and Hayes's *Bivens* claims against Defendants be dismissed with prejudice.

## II. STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Larson*, 327 F.3d 762, 767 (8th Cir. 2003). A disputed fact is material only if it might affect the outcome of the case under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010).

## III. LEGAL ANALYSIS

Hayes alleges that in July 2009, she approached Diaz regarding the pain she was experiencing in her fingers, hand, and arm. ECF No. 4 ¶ 19. According to Hayes, Diaz (1) failed to refer her to Health Services or request that Health Services provide Hayes medical care and/or treatment, and (2) failed to give her time off of work so that she could recover from her injury. *Id.*

---

[2] Defendants' second motion for summary judgment was filed on October 17, 2014. Pursuant to Local Rule 7.1, Hayes's response memorandum was due on November 7, 2014. On January 30, this Court received a letter from Hayes requesting an extension to file a responsive brief. *See* ECF No. 76. Because Hayes did not submit this request until almost three months after her deadline to respond, Hayes's request is denied.

Hayes also alleges that Abbott (1) failed to give her time off or another job assignment, and (2) failed to refer her to Health Services for treatment. *Id.* ¶ 20. Additionally, Hayes alleges throughout the Amended Complaint that both Defendants (1) refused to allow her to stop working at UNICOR and (2) threatened to send her to the segregated housing unit ("SHU") or levy other administrative punishments against her if she stopped working at UNICOR. *Id.* ¶¶ 24, 35, 39. These actions, according to Hayes, violated her Eighth Amendment right to be free from cruel and unusual punishment.

Conversely, Defendants argue that Hayes's claims should be dismissed on qualified immunity grounds.[3] *See* ECF No. 68 at 22. Qualified immunity protects government actors from personal liability unless the official's conduct "violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burton v. Martin*, 737 F.3d 1219, 1228 (8th Cir. 2013). The Court considers two questions to determine whether the officials are protected by qualified immunity: (1) whether the facts alleged, viewed in the plaintiff's favor, support a finding that the conduct of the defendants violated a constitutional right; and (2) whether

---

[3] Defendants also argue that the Federal Tort Claims Act's judgment bar precludes Hayes's *Bivens* claims. ECF No. 68 at 20–22. The FTCA states that a judgment in an action under the FTCA "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. Here, Hayes's FTCA claims were dismissed without prejudice for lack of subject matter jurisdiction because Hayes failed to exhaust her administrative remedies and because the Inmate Accident Compensation Act precluded the FTCA claims. ECF No. 64 at 5–6, 7–8. Although it does not appear that the Eighth Circuit has addressed this precise issue, at least one circuit court has held that the FTCA's judgment bar does not apply when the FTCA claims are dismissed for lack of subject matter jurisdiction. *See Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 579–80 (6th Cir. 2014). Accordingly, the Court declines to dismiss Hayes's *Bivens* claims pursuant to the FTCA's judgment bar.

that constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* The order in which the qualified immunity prongs are addressed is left to the Court's sound discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Therefore, the Court first addresses whether the facts support a finding that Defendants violated Hayes's constitutional rights under the Eighth Amendment.

**A.      Alleged Eighth Amendment Violations by Defendants**

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court held that an individual who suffers a constitutional violation through the actions of a federal employee may recover damages from the employee regardless of whether a statute directly confers such a right. 403 U.S. 388, 395–96 (1971). To that end, it is well established that a prison official violates an inmate's right to be free from cruel and unusual punishment under the Eighth Amendment when the prison official demonstrates "deliberate indifference" to the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S 97, 105 (1976) (holding that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment).

To prove such a claim under the Eighth Amendment, a plaintiff must establish that: (1) he or she suffered an objectively serious medical need, and (2) the prison officials knew of, but deliberately disregarded, that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 443 F.3d 642, 646 (8th Cir. 2006); *see also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) ("[D]eliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless

disregard of the known risk."); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Mere negligence . . . [is] insufficient to rise to a constitutional violation."). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany*, 132 F.3d at 1239 (quoting *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment." *Id.*

Assuming without deciding that Hayes's pain in her hands and fingers constituted a "serious medical need," to survive a motion for summary judgment, Hayes must still allege sufficient issues of material fact that Defendants knew of and deliberately disregarded this medical need. After reviewing the evidence in the record, including the BOP job assignment procedures, the declarations submitted by the Defendants, and the records submitted by Hayes, the Court concludes that Hayes has not alleged sufficient facts that show Defendants deliberately disregarded her serious medical needs. Therefore, for the reasons set forth below, the Court recommends that Hayes's *Bivens* action against Defendants should be dismissed with prejudice.

### 1.     Defendants' alleged failure to refer Hayes to health services

As stated above, Hayes alleges that Abbott and Diaz violated her Eighth Amendment rights by failing to refer her to Health Services while she worked for UNICOR in order for her to receive necessary treatment for her hands and fingers. ECF No. 4 ¶¶ 19 and 20. Defendants, however, argue that inmates do not need a referral from a UNICOR supervisor in order to visit Health Services. ECF No. 68 at 35–36. Additionally, Defendants argue that a non-medical professional could not have known that Hayes's condition presented an immediate emergency that required treatment. *Id.* at 36.

The Court agrees with Defendants.

According to Dr. Sandra Lauring, the Clinical Director at FCI-Waseca, all inmates at FCI-Waseca have ready access to Health Services. Lauring Decl. ¶ 9, ECF No. 74. Specifically, inmates are allowed to miss work in order to seek out medical care and attention. *Id.* Additionally, inmates do not need to seek approval with their work supervisor in order to go to Health Services. ECF No. 71 ¶ 4. Hayes has not provided this Court with any evidence that shows such procedures were disregarded.

The record does not support Hayes's allegations that Defendants failed to refer her to Health Services to treat her hands and fingers. Although *pro se* pleadings are liberally construed, mere allegations and conclusory statements are insufficient to preclude summary judgment. *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir. 1990). "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* Here, apart from the general allegations in Hayes's Amended Complaint, Hayes has not provided any evidence that supports her claim that Defendants prevented her from seeking medical attention at Health Services. Indeed, on more than one occasion, it appears that both Abbott and Diaz instructed Hayes to seek assistance from Health Services if she was in pain. *See* Abbott Decl. (Second) ¶ 14, ECF No. 69 (Abbott informed Hayes that it was up to her to visit Health Services if she was in pain); *id.* ¶ 16 (Abbott suggested that Hayes could be placed on a medical absence with a proper medical restriction from Health Services); Diaz Decl. (Second) ¶ 9, ECF No. 71 (Diaz advised Hayes to meet with Health Services if her hands were giving her problems).

Therefore, the Court concludes that no trier of fact could find that Defendants' actions were deliberately indifferent to Hayes's medical needs because there is no evidence that the Defendants

ever denied Hayes access to Health Services. Moreover, the BOP policies as outlined by Dr. Lauring show that inmates do not need their work supervisor's approval before seeing Health Services. Apart from conclusory allegations in her Amended Complaint, Hayes has not provided any evidence that shows Defendants denied her access to Health Services. Accordingly, to the extent Defendants' motion seeks to dismiss Hayes's claims for Eighth Amendment violations against Defendants for failing to refer her to Health Services and for preventing her from receiving medical treatment, the motion should be granted.

### 2. Defendants' alleged failure to give Hayes time off from work

Next, Hayes claims that Diaz did not "allow her time off [from] her work schedule so that she could recover from her injury," and that Abbott "failed to give her time off or another job assignment." ECF No. 4 ¶¶ 19 and 20. Defendants argue that nothing in the record supports these claims. ECF No. 68 at 33–34. The Court agrees with Defendants.

According to Dr. Lauring, inmates may be excused from work for medical reasons only if they first obtain a medical restriction issued from Health Services. ECF No. 74 ¶¶ 5–6. Medical restrictions may be either temporary or permanent, depending on the physical limitations or impairments. *Id.* ¶ 5. Dr. Lauring states that "[d]epending on the specific condition at issue, a medical restriction can significantly impact an inmate's ability to participate in various aspects of prison life, such as work, recreation, and/or eating in the dining hall." *Id.* According to Dr. Lauring, an inmate usually obtains a medical restriction after being assessed by a medical professional at Health Services and diagnosed with a condition requiring a restriction. *Id.* ¶ 6. As stated above, inmates do not need their work supervisor's permission to visit Health Services. Once an inmate is issued a written medical restriction, Dr. Lauring states, the inmate is given three copies: one for the

11

inmate's job supervisor, one for the inmate's unit officer, and one for the inmate to keep. *Id.*

Records submitted by Hayes show that the first time Hayes received a medical restriction that limited the work she could perform with her hands was in November 2009. *See* ECF No. 56-1 at 60 (stating that Hayes had a work restriction of "No Repetitive Use of Hands"). While Hayes had other medical restrictions in place at various times while she worked at UNICOR, none of these restrictions limited her ability to work with her hands or fingers. *See, e.g.*, *id.* at 57 (medical restriction signed on 5/19/09 that allowed Hayes to use tape and/or a splint on her wrist during the night but did not contain any work restrictions); *id.* at 58 (medical restriction signed on 6/3/09 that allowed Hayes to miss work for one day presumably due to stomach cramps (*see* ECF No. 56 at 73, which shows Hayes visited Health Services on 6/2/09 for stomach cramp issues)); *id.* at 54 (medical restriction signed on 9/30/09 indicating that Hayes had no work restrictions).

These records show that the earliest UNICOR staff was on notice that Hayes could not perform her required work due to pain in her hands and fingers was November 2009. According to Diaz, he received an email on November 6, 2009 informing him that Health Services recommended that Hayes should not be in a job that required the repetitive use of hands. ECF No. 71 ¶ 13. Diaz states that on that same day, he advised Hayes's Unit Manager and Correctional Counselor via email that UNICOR was unable to accommodate Hayes's medical needs because there were no UNICOR jobs that did not require the repetitive use of hands. *Id.* ¶ 14. On November 9, 2009, Hayes's Unit Team[4] reassigned her from UNICOR to a position with religious services. *Id.* ¶ 14. Thus, the record does not support Hayes's allegations that Diaz refused to give her time off from work.

---

[4]
> An inmate's Unit Team may consist of a unit manager, case manager, correctional counsel, unit secretary, unit officer, education representative, and/or psychologist. BOP Program Statement 8120.02, at 4–5, ECF No. 69, Ex. D.

Although Hayes's medical records indicate she began complaining to Health Services about pain in her hands in early 2009, these records are confidential and not available to UNICOR staff. ECF No. 74 ¶ 10. In support of her claim that Abbott knew that she was suffering from pain in her hands prior to November 2009, Hayes provided this Court with a note purportedly sent from Hayes to both Health Services and Abbott on May 9, 2009. *See* ECF No. 56-1 at 109. In this note, Hayes stated, "I don't care about a job I'm losing my hands." *Id.* Although Defendants have questioned this note's authenticity, *see* ECF No. 68 at 18 and 31, the note in and of itself does not provide sufficient evidence for Hayes's claim to survive Defendants' summary judgment motion. As stated above, "the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany*, 132 F.3d at 1239; *see also Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (stating that "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment"). This note was allegedly sent to both Health Services and to Abbott. Abbott is not a health professional and thus could not have known that Hayes's condition was so serious that it created an excessive risk to Hayes's health until she was given a medical restriction in November 2009. Moreover, pursuant to BOP procedures, Abbott did not have authority to excuse Hayes from work unless Health Services issued a medical restriction. Finally, Abbott could not have simply moved Hayes to another position within UNICOR because UNICOR had no positions available that did not involve working with one's hands. ECF No. 69 ¶ 16; ECF No. 71 ¶ 14.

Based on these facts, the Court concludes that Hayes has failed to raise a genuine dispute of fact from which a trier of fact could conclude that Defendants acted with deliberate indifference to

Hayes's medical needs by failing to give her time off from work. Therefore, to the extent Defendants' motion seeks to dismiss Hayes's claims for Eighth Amendment violations against Abbott and Diaz for failing to give her time off from work, the motion should be granted.

### 3. Defendants' alleged refusal to allow Hayes to quit her UNICOR job

Hayes further alleges that Defendants "would not allow her to quit working [at UNICOR] even though she complained of pain and her hand and fingers were locked in a disfigured position." ECF No. 4 ¶ 24. In response, Defendants claim that because UNICOR staff do not control an inmate's job assignments, any allegation that Defendants violated Hayes's Eighth Amendment rights by refusing to allow her to quit her job is without merit.

In general, all inmates incarcerated in federal prisons are assigned to an institutional, industrial, or commissary work program. *See* 28 C.F.R. 545.23. UNICOR provides one such work option. Defendants state that once an inmate is assigned to work for UNICOR, any changes to the inmate's job assignment are ultimately made by the inmate's BOP Unit Team, not by UNICOR. *See* BOP Program Statement 5251.06, at 4, ECF No. 69, Ex. C ("The inmate's unit team ordinarily makes work and program assignments."). Therefore, according to Defendants, "an inmate at FCI-Waseca wishing to quit her UNICOR job generally either has to have a medical restriction that UNICOR is unable to accommodate, or has to communicate a desire to quit to both UNICOR and the inmate's Unit Team." ECF No. 68 at 5.

An inmate can indicate a desire to leave UNICOR by utilizing an "Inmate Request to Staff" form (also known as a "cop-out" form). *Id.* at 5–6; ECF No. 69 ¶ 9. Prior to approving an inmate's request to transfer jobs, the inmate's Unit Team may ask the inmate whether she has discussed her intention to quit with UNICOR. Thus, the cop-out form is sometimes first brought to UNICOR for

written approval. ECF No. 68 at 5–6. Defendants claim that when an inmate brings UNICOR staff a cop-out form, the staff often discusses with the inmate her options and the consequences of quitting. ECF No. 69 ¶ 9; ECF No. 71 ¶ 5. After meeting with the inmate, UNICOR staff usually write "OK" on the cop-out form. ECF No. 68 at 2. At this time, it is up to the inmate to then meet with her Unit Team if she continues to want to terminate her employment with UNICOR. *Id.* at 6. The fact that UNICOR staff approves the job change does not automatically terminate the inmate's employment with UNICOR. Hayes has not provided this Court with any evidence that such procedures were not followed in the present case.

In this Court's first Report and Recommendation, the Court expressed concerns with two forms submitted by Hayes in her post-hearing submissions. *See* ECF No. 59 at 16–17. The first was an inmate request addressed to Diaz dated August 28, 2009, which stated that she wanted to leave her position with UNICOR due to pain in her hands. ECF No. 56-1 at 111. Diaz wrote "OK" and signed and dated the form the same day. *Id.* The Court observed that although Hayes expressed this desire to leave on August 28, she was not released from her UNICOR job until early November 2009, over two months later. ECF No. 59 at 16. Without context, this form concerned the Court that Diaz may have known Hayes had a serious medical condition but deliberately disregarded it. *See id.* at 18. However, upon reviewing this form within the context of the procedures outlined by Defendants, which Hayes has not disputed, it appears that Diaz's notation of "OK" on the form simply indicated that he approved of Hayes's request to change jobs. It was then up to Hayes to take the next step and present the cop-out form to her Unit Team so that they could place her in a new job position.

As stated above, "deliberate indifference" requires a showing that the defendant recklessly

disregarded a known risk or that the defendant intentionally denied a plaintiff's access to medical care. *See Reynolds*, 636 F.3d at 979; *Dulany*, 132 F.3d at 1239. The Court concludes that no trier of fact could conclude that Diaz recklessly disregarded Hayes's medical needs when he allowed her to continue working after signing her cop-out form because it was Hayes's responsibility to request a job change from her Unit Team after Diaz signed the form. *See Farmer*, 511 U.S. at 844 (stating that prison officials can be "found free from liability [under the Eighth Amendment] if they responded reasonably to a risk, even if the harm was ultimately averted"). Moreover, under BOP policy, Diaz had no authority to make any changes to Hayes's work assignment because he was not part of her Unit Team.

The second form that concerned this Court was a form dated May 9, 2009 in which Hayes allegedly informed Abbott that she wanted to be moved from UNICOR to a new job. *See* ECF No. 56-1 at 109. Although Defendants have questioned this document's authenticity, *see* ECF No. 68 at 18 and 31, the form nevertheless fails to provide sufficient evidence to create an issue of material fact as to whether Abbott refused to let Hayes quit her job. As with Diaz, Abbott was not authorized to make changes to Hayes's work assignment. Additionally, Hayes did not receive a medical restriction from Health Services until November 2009. The May 2009 note was allegedly sent to both Abbott and Health Services and thus, if Hayes had a serious condition at that time that would have affected her ability to work, a medical restriction showing that Hayes required a job change would have been issued by Health Services. Thus, the Court concludes that Abbott did not recklessly disregard Hayes's medical needs when he allowed her to continue working after receiving the May 9 note. *See Farmer*, 511 U.S. at 844 (stating that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the

16

risk").

Accordingly, to the extent Defendants' motion seeks to dismiss Hayes's claim that Defendants violated her Eighth Amendment rights by refusing to allow her to quit her job at UNICOR, Defendants' motion should be granted.

### 4. Defendants' alleged threats of discipline

Finally, Hayes claims that Defendants threatened to put Hayes in SHU and write her up if she failed to perform her work duties. ECF No. 4 ¶ 39. Hayes, however, has not provided this Court with any evidence that supports this claim. Additionally, according to Defendants, UNICOR staff and management lack the authority to place inmates in SHU. ECF No. 69 ¶ 18 (indicating that only a Lieutenant or a Captain had the authority to place an inmate in SHU). Finally, Hayes does not allege in her Amended Complaint that she was ever actually placed in SHU for anything related to her job or health conditions. *See generally* ECF No. 4. Thus, even if Defendants did inform Hayes that the failure to perform her work could result in administrative penalties, this conduct does not rise to an Eighth Amendment constitutional violation as it does not show Defendants deliberately disregarded a serious medical condition. Accordingly, to the extent Defendants' motion seeks to dismiss Hayes's claims for Eight Amendment violations against Defendants for threatening to discipline Hayes if she did not perform her work duties, the motion should be granted.

Because the Court concludes that Defendants did not violate Hayes's Eighth Amendment rights, there is no need for the Court to evaluate the second prong of the qualified immunity analysis; namely, whether the constitutional right was "clearly established" at the time of the alleged violation. *See Fields v. Abbott*, 652 F.3d 886, 894 (8th Cir. 2011) (stating that the court need not address the second prong of the qualified immunity analysis when it finds that defendants did not

violate plaintiff's constitutional rights).

**B.     Conclusion**

The Court's primary reason for denying Abbott's and Diaz's first motion for summary judgment was because the Court did not have relevant information regarding BOP/UNICOR procedures, how inmates are given health restrictions for their jobs, and how inmates are assigned new job positions in order to properly weigh the evidence submitted by Hayes following the hearing on Defendants' first motion for summary judgment. *See* ECF No. 59 at 19. In bringing their second motion for summary judgment, Defendants provided this Court with additional information on the applicable BOP procedures. Based on this new information, the Court concludes that summary judgment in favor of Defendants is now appropriate. Hayes has not raised any genuine disputes of material fact from which a trier of fact could conclude that Defendants had been deliberately indifferent to Hayes's medical needs while she worked at UNICOR. Because the Court concludes that Defendants did not violate Hayes's Eighth Amendment rights, there is no need for the Court to evaluate whether the constitutional right was clearly established the Court need not address the other prong of the qualified-immunity analysis Accordingly, Defendants' motion for summary judgment should be granted.

## V. ORDER AND RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's request for an extension to file a responsive brief (ECF No. 76) is **DENIED**. Additionally, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 67) should be **GRANTED** and all remaining claims against Defendants Abbott and Diaz should be **DISMISSED WITH PREJUDICE**.

DATED: February 5, 2015          */s Franklin L. Noel*
                                 FRANKLIN L. NOEL
                                 United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before February 19, 2015, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.